UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICK J. TORRES,

                      Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                      Defendant.

Case No. 3:10-cv-05654-BHS-KLS

REPORT AND RECOMMENDATION

Noted for November 11, 2011

      Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      On August 24, 2006, plaintiff filed an application for disability insurance and another one

REPORT AND RECOMMENDATION - 1

for SSI benefits, alleging disability as of April 15, 2002, due to attention deficit hyperactivity disorder ("ADHD"), a bipolar disorder, depression, and anxiety. See Administrative Record ("AR") 9, 103, 109, 143. Both applications were denied upon initial administrative review and on reconsideration. See AR 9, 53, 56, 58, 61. A hearing was held before an administrative law judge ("ALJ") on May 20, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 23-34.

On June 24, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 9-18. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 14, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On September 13, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on March 22, 2011. See ECF #14. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues that the ALJ's decision should be reversed and that this matter should be remanded for further administrative proceedings, because the ALJ erred (1) in evaluating the medical evidence in the record, and (2) in assessing plaintiff's residual functional capacity. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled. Accordingly, the undersigned recommends defendant's decision be reversed, and that this matter be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

REPORT AND RECOMMENDATION - 3

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Bowerly and Dr. Moore

The record contains a state agency psychological/psychiatric evaluation form completed in late February 2007, by Todd D. Bowerly, Ph.D., who assessed plaintiff with several moderate

REPORT AND RECOMMENDATION - 4

to marked mental functional limitations based on a diagnosis of bipolar disorder, with the most recent episode being mixed. See AR 365-66. Dr. Bowerly opined that plaintiff's prognosis was "good" if he could be "adequately medicated and treated," and that he demonstrated "adequate" understanding, reasoning, attention, concentration and memory, but he was limited in the areas of persistence, judgment, social functioning and adaptation. AR 370.

Another such form was completed in early November 2007, by Lawrence H. Moore, Ph.D., who also assessed plaintiff with several moderate to marked mental functional limitations, based on a diagnosis of moderate bipolar disorder, with the most recent episode being depressed. See AR 358-59. Dr. Moore also opined that plaintiff had "experienced the presence of [a] fairly chronic mood disturbance despite various efforts to treat his condition," and that because of the chronic nature of plaintiff's condition, his mood disturbance "may not fully respond to treatment efforts." AR 362. In addition, Dr. Moore suggested plaintiff either "seek long-term disability compensation" or "attempt to access vocational rehabilitation services that would help him find suitable employment and accommodate[ion] for his emotional instability." Id. Dr. Moore further found plaintiff was able to reason, understand and remember, but stated he had some limitations in his ability to concentrate, persist, adapt, and interact socially, and believed his prognosis was "guarded given the chronic and severe nature of his difficulties." AR 363.

Dr. Moore completed a second psychological/psychiatric evaluation form in late October 2008, in which he again found plaintiff to be moderately to markedly limited in several areas of mental functioning, based on the same diagnosis. See AR 352-53. Dr. Moore also opined that although his cognition was "**generally intact**," plaintiff continued to show "**poor judgment, particularly during manic episodes**," and he demonstrated "**ongoing mood instability despite intervention**." AR 353 (emphasis in original); see also AR 354 (further noting plaintiff had not

REPORT AND RECOMMENDATION - 5

responded well to treatment, with no significant improvement). In addition, Dr. Moore opined that "[o]ngoing intervention [was] warranted in order to help [plaintiff] achieve some level of stability." AR 355. Lastly, as he did in his previous evaluation, Dr. Moore stated that while plaintiff was able to reason, understand and remember, he had some limitations in his ability to concentrate, persist, adapt, and interact socially, and his prognosis was guarded given the chronic and severe nature of his difficulties. See AR 356.

The ALJ stated in his decision that he had "considered" the opinions of Drs. Bowerly and Moore, but that he was according them "little weight," because Dr. Bowerly and Dr. Moore were not plaintiff's treatment providers, and "their opinions pertained to public assistance eligibility, which [was] governed by criteria different than that of the Social Security Act and Regulations." AR 16-17. But the undersigned agrees with plaintiff that neither of these are valid reasons for rejecting the opinions of Drs. Bowerly and Moore. First, as noted above, since Dr. Bowerly and Dr. Moore are examining psychologists, the opinions they provide in themselves may constitute substantial evidence. In addition, while the ALJ may give greater weight to the opinions of plaintiff's treatment providers on the basis of that treatment relationship, in this case the ALJ did not do so. Thus, he erred here.

Second, it is true that a determination of disability made by another government agency is not binding on the Social Security Administration, which must base its determination "on its own rules." 20 C.F.R. § 404.1504, § 416.904. Thus, where the criteria for determining disability used by another agency is not identical to those employed by the Social Security Administration, a determination of disability made by that other agency "is not legally binding on" defendant. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (holding in context of United States Department of Veterans Affairs determination of disability). But the ALJ's decision in this case

REPORT AND RECOMMENDATION - 6

contains no discussion of the criteria employed by the other governmental agency, although plaintiff does not contest the ALJ's assertion that they are different from those employed by the Social Security Administration.

While Dr. Moore did suggest plaintiff seek long-term disability compensation in his first evaluation report – an issue reserved to defendant – both he and Dr. Bowerly also provided their opinions concerning the extent to which they found plaintiff's mental impairment affected his functioning. Thus, as plaintiff correctly points out, the ALJ at the very least was required to set forth valid reasons for not adopting those opinions. Nor does the undersigned find this error is harmless, given that the opinions of both Dr. Bowerly and Dr. Moore indicate or suggest mental functional limitations greater than those the ALJ included in his assessment of plaintiff's residual functional capacity, which restricted plaintiff to no public contact and only occasional interaction with co-workers. See AR 15; Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

### B. Dr. Mecouch and Dr. Peterson

A psychiatric evaluation was performed in early November 2006, by George Mecouch, D.O., who diagnosed plaintiff with a bipolar disorder, the last episode depressed, and ADHD of mixed type by history, both conditions currently un-medicated. See AR 255. Dr. Mecouch also assessed plaintiff with a current global assessment of functioning ("GAF") score of 60, with a GAF score of "65 plus" being the highest in the past year.[1] Id. Dr. Mecouch stated as well that

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008)

REPORT AND RECOMMENDATION - 7

whether plaintiff's bipolar disorder was preventing him from engaging in full-time employment was "questionable", and that if he "could be adequately medicated and treated," his "prognosis to return to full time employment would be excellent." Id.

In early December 2006, a mental residual functional capacity assessment form was completed by Anita Peterson, Ph.D., a non-examining psychologist, who in the first part of that form checked boxes indicating plaintiff had some moderate limitations in social functioning. See AR 260. In the last part of the form, Dr. Peterson stated that plaintiff "functions independently, socializes regularly and appropriately and worked as recently as one month ago," and therefore it was "unclear" why he could not work "on a regular basis." AR 261. With respect to plaintiff's ability to function, Dr. Peterson opined that he would be able to perform simple, repetitive and/or routine tasks, as well as detailed tasks, concentrate for up to two hours at a time, and could adapt to changes in the workplace. Id. Plaintiff would not be able to work with the general public, and would "work best away from public contact."[2] Id.

Plaintiff argues that while the ALJ discussed the findings and opinions of Dr. Mecouch and Dr. Peterson, he did not state what weight he was giving to them, and as such he erred. See AR 16. The undersigned agrees the ALJ erred here, but such error is harmful only with respect to the findings and opinions of Dr. Mecouch. Plaintiff asserts the ALJ erred because he gave no reasons for not accounting for the mental functional limitations assessed by Dr. Peterson. But none of those limitations – at least the ones the ALJ was required to take into consideration – are inconsistent with the mental residual functional capacity the ALJ assessed, in which plaintiff was

---

(quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 1994) ("DSM-IV"). "A GAF score of 61-70 reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting DSM-IV at 30).

[2] Dr. Peterson's findings and opinions were later affirmed by Bruce Eather, Ph.D. See AR 308.

REPORT AND RECOMMENDATION - 8

precluded from having any contact with the public and was limited to only occasional interaction with co-workers.[3] See AR 15.

On the other hand, although Dr. Mecouch did state that is was questionable as to whether plaintiff's bipolar disorder was preventing him from engaging in full-time employment, he also stated that if plaintiff could be adequately medicated and treated, his prognosis to return to full-time employment would be excellent. This last statement indicates that at the time he evaluated plaintiff, Dr. Mecouch did not believe plaintiff was employable unless and until he had received adequate medication and mental health treatment. At the very least, Dr. Mecouch's opinion was ambiguous, and therefore should have been addressed by the ALJ.

Defendant points out correctly, as noted above, that one way the specific and legitimate reason requirement for rejecting controverted medical opinion evidence can be satisfied, is by summarizing that evidence in detail and interpreting it. However, the problem is that although the ALJ summarized Dr. Mecouch's opinion – and arguably did so in sufficient detail – he gave no interpretation thereof. That is, he did not state what weight he accorded it. In addition, while the ALJ's assessment of plaintiff's residual functional capacity does certainly indicate the ALJ was rejecting any opinion that plaintiff could not engage in full-time employment, again the ALJ gave reason as to why Dr. Mecouch's opinion lacked credibility here.

---

[3] It is true that Dr. Peterson checked a box in the first part of the evaluation form she completed indicating plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. See AR 260. But no such limitation was included in the last part of the evaluation form in which Dr. Peterson gave her written comments. See 261. Pursuant to the directive contained in the Program Operations Manual System ("POMS"), "**[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III**[, the last section on the mental residual functional capacity evaluation form Dr. Peterson completed,] **. . . that adjudicators are to use as the assessment of RFC**," and not the specific mental functional categories checked in the first part thereof. POMS DI 25020.010(B)(1), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010!opendocument (emphasis in original). Although the POMS "does not have the force of law," it has been recognized as "persuasive authority" in the Ninth Circuit. Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). The undersigned also does not find, nor does plaintiff provide, any valid reasons for not following that directive in this case. As such, the ALJ was not required to include any limitation in regard to supervision in his own assessment of plaintiff's residual functional capacity.

REPORT AND RECOMMENDATION - 9

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity to perform a full range of work at all exertional levels, but, as noted above, with the additional limitations that he should have no contact with the public and only occasional interaction with co-workers. See AR 15. Plaintiff argues, and the undersigned agrees, that because the ALJ erred in evaluating the

REPORT AND RECOMMENDATION - 10

medical evidence in the record as discussed above, it is not at all clear that the RFC with which plaintiff was assessed accurately describes all of his mental limitations. Here too, therefore, the undersigned finds the ALJ erred. In addition, because of these errors, it also is unclear whether plaintiff is capable of performing his past relevant work as found by the ALJ at step four of the sequential disability evaluation process. See AR 17.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments, his mental residual functional capacity, and his ability to perform his past

REPORT AND RECOMMENDATION - 11

relevant work, it is appropriate to remand this matter to defendant for the purpose of conducting further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. As such, the undersigned also recommends the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 11, 2011**, as noted in the caption.

DATED this 24th day of October, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12